THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LEONARD GREGORY, Defendant-Appellant.

Second District (2nd Division) No. 75-52

Opinion filed February 13, 1976.

Ralph Ruebner and Mary McCormick, both of State Appellate Defender's Office, of Elgin, for appellant.

Jack Hoogasian, State's Attorney, of Waukegan (Edward N. Morris, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant Leonard Gregory was convicted of the offenses of aggravated assault and unlawful use of weapons. The Circuit Court of Lake County sentenced him to a term of 2 to 6 years for the unlawful use of weapons conviction and to a term of 6 months for the aggravated assault. He appeals contending that the court erred in imposing consecutive sentences.

On May 9, 1974, Michael David Medina, dealer in heroin, was approached by the defendant, whom he knew as 'Rosco,' in front of his house about 4 p.m. Defendant asked him for $50, which Medina had "ripped off" from defendant's girlfriend. Medina stated that he had "ripped off" the girl, because she had ripped him off for $45 at an earlier date. Medina pulled out $150 to $200 and gave defendant $15. He told him to come back later for the rest.

Defendant came back to Medina's house about one-half hour later, and asked Medina to give him some heroin. Medina said he didn't have any but would see what he could do. Defendant then pulled out a silver gun with a pearl handle and said, "All right, give it to me, this is a rip off." Defendant put the gun to Medina's head and said, "I want your money." Medina gave him $35 which he had. Defendant asked where the rest of the money had gone, Medina said he had given it to Ceasar, his supplier. Defendant then said, "Well, take me by his house."

Medina got into his car with defendant, defendant's girl friend and another friend. Instead of driving to Ceasar's house, Medina went to the house next door to Ceasar's. The woman who answered the door pointed toward the next house. When Medina got back in the car, defendant said, "Well you try to play a funny one on me," and drove the car himself. He gave the gun to the man in the back seat and said, "Well, I'm going to take you somewhere and kill you." As they drove around the block, Medina said he would take them to Ceasar's house.

When they arrived at Ceasar's residence, defendant held the gun under his coat. Medina knocked on the door and tried to tell the woman who answered the door, in Spanish, not to let the man in because he had a gun. The woman, Emilia Garcia, heard Medina say to close the door, but because someone was behind him, did not do so. Medina tried to close the door, but defendant pushed it open. When Medina and defendant entered the kitchen, Ceasar's mother and sister, and four or five small children, were around the kitchen table. There were other people in the dining room. Mrs. Garcia called upstairs to Ceasar to come downstairs. Medina entered the dining room and tried to get under the table, while defendant had the gun pointed at him. When Ceasar came downstairs, Mrs. Garcia heard him say to Medina, "I told you don't bring nobody to my house." Ceasar went outside, expecting the two men to follow. When they didn't he came back to the kitchen and grabbed defendant by the arm. As they struggled, Medina came up behind Ceasar and threw an ash tray at defendant. Defendant fired the gun three times. He missed Ceasar, who slipped on the floor, and hit Medina in the shoulder. Defendant then ran from the house.

At trial, the State and the defendant stipulated that the defendant had been convicted of robbery on January 11, 1968, and had been released from the Illinois State Penitentiary on August 9, 1971, within 5 years of the date of the incident.

At the sentencing hearing on November 20, 1974, the trial court in imposing sentence, stated:

"* * * But there were two actions which took place at exactly the same time or within—What? Seconds?

MR. RADOSEVICH [State's Attorney]: Split seconds.

THE COURT: Split seconds of each other. It was all part of one continuous transaction, altercation or whatever.

With regard to the charge of aggravated assault and the verdict and judgment of guilty, the Court sentences the defendant to six months in the Lake County Jail.

With regard to the charge of the unauthorized possession of firearms the Court enters judgment to an indeterminate term of not less than 2 nor more than 6 years in the Illinois State Penitentiary, and he is hereby committed to the custody of the Department of Corrections of the State of Illinois to serve said term."

Later in the hearing, as the parties were leaving the courtroom, the court reporter asked the judge: "Judge, on that six months' County Jail sentence is he given credit for what he's had or anything." The following discussion then ensued:

"THE COURT: Oh. That's why I did it that way. Come back here, gentlemen.

Let the record further show that—When did your client go to jail?

MR. GREGORY: May the 9th.

THE COURT: May 9th?

MR. GREGORY: Yes.

THE COURT: Let the record show that the defendant Gregory has served the full period of six months on the confinement—Which one was that now? That was on the aggravated—

MR. RADOSEVICH: Assault.

THE COURT: assault, being a Class A misdemeanor.

MR. WILSON: Your Honor, he is still to get credit for time served, the credit he's been in custody.

THE COURT: No.

MR. WILSON: I would like to ask the question that the court reporter asked the Court when I was about ready to leave, which reminded the Court in this procedure.

THE COURT: The question?

MR. WILSON: Yes.

THE COURT: The question was, 'Judge, what are you going to do about the time the defendant has been in custody?'

MR. WILSON: The net result of this procedure, your Honor, is to impose a consecutive sentence on the defendant.

THE COURT: That's right.

MR. WILSON: And that was not expressed by the Court.

THE COURT: Very well. I will express it now, counsel.

MR. WILSON: It seems to me, your Honor, that a 2 to 6 year sentence, which is fairly close to the maximum that the Court could give in this case—

THE COURT: 1 to 10?

MR. WILSON: Yes.

THE COURT: That's 3⅓ to 10.

MR. WILSON: Yes. It's very close to the maximum for one charge of merely possessing a weapon within five years of his release from the penitentiary. Now, if this Court, I take it, indicates that he is imposing consecutive sentences for something that occurred in a split second as a part and parcel of both crimes indicates to the Court in my estimation that the Court is taking something else into consideration.

THE COURT: I expressed to you the fact that this man fired a gun and you brought up the fact and reminded me of the fact that he was found not guilty of the aggravated battery, and I told you that that involved Medina in which case he was found not guilty, and as far as Medina was concerned I paid absolutely no attention to that.

But he also was charged with firing his gun at this fellow Betiz [Ceasar].

MR. WILSON: I understand that, but, your Honor, we stood here before the bar. I made an argument the best I could. The Court sentences the defendant 2 to 6 and six months on this, and now at the request of the court reporter has made a consecutive sentence out of it? I think it's most unjust.

THE COURT: The court reporter made absolutely no request.

MR. WILSON: The court reporter's only function in a court of law is to sit there and put down on paper or through this machine what she hears. She has no voice at all in these proceedings.

THE COURT: She has a right to ask for clarification. In fact, it's her duty to see that the record is accurate. That is her function, to get an absolutely correct, accurate record of the proceedings.

MR. WILSON: So now the record reflects that the Court has imposed consecutive sentences?

THE COURT: That is correct. The court at no time indicated any concurrent sentences in this case.

MR. WILSON: After his term had already expired. Thank you, your Honor.

THE COURT: Counselor, if you wish, I could give more reasons for giving this young man a greater sentence. I am trying

to be within reason and I think I am being actually on the low side in view of his background, but I have given him a sentence and the sentence will stand."

Section 5—8—4(a) of the Unified Code of Corrections (Ill. Rev. Stat. ch. 38, §1005—8—4(a)) provides that the trial court "shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective."

The testimony received at trial indicates the judge was correct in concluding that he could impose consecutive sentences for the unlawful use of weapons and aggravated assault charges. The testimony showed that the charge of unlawful use of weapons was completed the moment the defendant first drew his gun on Michael Medina long before defendant arrived at Ceasar's home. The nature of defendant's criminal objective was to obtain money from Medina. When defendant committed his assault on Ceasar he was operating under a desire to protect himself from Ceasar who had grabbed his arm, and from Medina who had thrown an ash tray at him. The purpose of robbery shifted at the time defendant shot at Ceasar. We believe, after considering the events in their entirety, that the act of shooting at Ceasar was sufficient, not only to establish the existence of a "substantial change in the nature of the criminal objective" but also, to constitute a departure from a "single course of conduct." (*People v. Williams*, 60 Ill. 2d 1, 15; *People v. Kneller*, 25 Ill. App. 3d 935, 941.) We hold that section 5—8—4(a) is inapplicable and the consecutive sentence was proper.

The judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.